# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MERLIN WILLIAMS,

    Petitioner,

v.                                          Case No. 3:18-cv-1103-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

_____

## ORDER

**I.  Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, filed on September 10, 2018 (mailbox rule). See Doc. 1.[1] He challenges a state court (Duval County, Florida) judgment of conviction for first degree murder, robbery with a deadly weapon, and grand theft auto, for which he is serving life imprisonment. Id. at 1. Respondents filed a Response with exhibits. See Doc. 8.[2] Petitioner filed a Reply. See Doc. 10. This case is ripe for review.

---

[1] The Court cites to the page numbers as assigned by the Court's electronic case filing system.

[2] The Court cites to the exhibits, see Docs. 8-1 to 8-10, as "Ex."

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

2

> argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v.

3

Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

4

> confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland

5

> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## III. Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to file a motion to suppress the videotape of his confession because it was taken in violation of his Miranda[3] rights. See Doc. 1 at 5-10. Petitioner raised this claim as ground three in his state post-conviction proceedings pursuant to Florida

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Rule of Criminal Procedure 3.850. The state court denied the claim, finding in pertinent part:

> In Ground Three, Defendant avers counsel was ineffective for failing to file a Motion to Suppress the police interrogation video. In support of this contention, Defendant maintains the police obtained incriminating evidence in violation of his Miranda rights. Defendant asserts he made an unequivocal request for an attorney, but was never provided an attorney before the police reinitiated the interrogation. . . .
>
> At the commencement of Defendant's interrogation, the detectives read Defendant his Miranda rights and Defendant issued a written waiver. After being confronted with portions of [(co-defendant)] Jerrell's confession, Defendant exclaimed, "Well, I definitely need to get me a lawyer now." The detectives then advised Defendant to knock on the door if he wanted to talk again, but explained they had to leave the room as Defendant asked for an attorney. The detectives then left the room. Defendant then reinitiated the conversation. Before continuing the interrogation, however, the detectives clarified Defendant wanted to speak to them, to which Defendant responded with "of course I do.["] Thereafter, the detectives reread Defendant's Miranda rights and Defendant issued a second written waiver. Based on this evidence, it is clear the detectives immediately stopped questioning upon Defendant's invocation of Miranda rights and Defendant was the one to reinitiate the conversation. Defendant then properly waived those rights for a second time. As such, a motion to suppress based on a Miranda violation would have been meritless and counsel cannot be ineffective for failing to raise a meritless objection. . . . Ground Three is denied.

7

Ex. C1 at 279-81 (internal citations omitted). Petitioner appealed, and the First District Court of Appeal (DCA) per curiam affirmed the denial of Petitioner's Rule 3.850 motions without issuing a written opinion, and subsequently denied Petitioner's requests for rehearing. See Ex. C2; Williams v. State of Florida, No. 1D17-1672 (Fla. 1st DCA).

Upon thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Indeed, during the trial, the video of the interrogation was played for the jury. In pertinent part, the following exchange among Petitioner and the detectives occurred:

> THE DEFENDANT: Well, I definitely need to get me a lawyer now.
>
> DETECTIVE BARKER: Look, if you want to talk knock on the door and you can ask me and I'll be more than happy to come in and reinitiate, okay? I can't talk to you right now. If you change your mind and you want to talk to me knock on the door. I'll come in here, advise you of your rights and we'll start going again, but right now I can't talk with you, okay?
>
> THE DEFENDANT: Why is that?
>
> DETECTIVE BARKER: Because you just asked for an attorney.
>
> THE DEFENDANT: Golly.

8

> DETECTIVE BARKER: Okay. If you change your mind and want to talk about - - (Inaudible).
>
> (Detectives exit interview room.)
>
> DETECTIVE KUCZKOWSKI: Yeah?
>
> THE DEFENDANT: I - -
>
> DETECTIVE KUCZKOWSKI: What?
>
> THE DEFENDANT: I don't know. I just - - I need to - - I need ya'll to hear what I'm saying.
>
> DETECTIVE KUCZKOWSKI: Okay. Well, you asked for a lawyer. Do you want to talk to us again? We'll readvise you of your rights again, okay, but it's at your request. Do you want to talk to us?
>
> THE DEFENDANT: I'd like to get the matter straight.
>
> DETECTIVE KUCZKOWSKI: Well, answer my question. Do you want to talk to us again, yes or no?
>
> THE DEFENDANT: Of course I do.

Ex. B10 at 642-43. Detective Barker then readvised Petitioner of his rights, Petitioner completed a waiver form, and the interrogation continued. See id. at 643-44.

The record fully supports the state court's decision. Therefore, Ground One is due to be denied.

9

**B. Ground Two**

Petitioner claims that his trial counsel was ineffective for failing to have his competency evaluated. See Doc. 1 at 12-16. According to Petitioner, he suffers from bipolar disorder, and "a government psychologist" has declared him to be "mentally incompetent to the point of being unemployable." Id. at 12. He contends that he and his mother advised counsel and the trial court of his mental health issues, but counsel failed to have Petitioner evaluated. See id. at 12-14; see also Doc. 1-8 to 1-9 (letters from Petitioner's mother).

Petitioner raised this claim as ground one in his Rule 3.850 proceeding. The state court denied the claim as follows:

> In Ground One, Defendant claims counsel was ineffective for failing to conduct a competency evaluation prior to trial. In support of this contention, Defendant avers he was suffering from bipolar, hallucinations, and blackouts prior to and during his trial. Defendant opines his mental illness made him incompetent to stand trial. Defendant also contends if counsel had obtained his social security records, it would show Defendant was previously declared incompetent to work. Defendant asserts counsel was aware of his incompetency, but refused to seek a competency evaluation. Defendant further maintains he told the trial court about his mental health issues prior to trial, but the trial court refused to help him.
>
> Initially, this Court notes that on direct appeal, Defendant alleged the trial court erred in failing to request a competency evaluation after Defendant advised the trial court he needed help for his bipolar condition. In its Answer Brief, the State argued Defendant's representations and conduct at trial did

> not give the trial court reasonable grounds to believe Defendant's competency was in question. In affirming Defendant's conviction and sentence, the First District Court of Appeal rejected Defendant's argument. Here, Defendant is attempting to guise the same claim he raised on direct appeal under the cloak of ineffective assistance of counsel. Such claims are procedurally barred.
>
> Further, to satisfy the deficiency prong based on counsel's handling of a competency issue, a defendant must allege specific facts that show a reasonable attorney would have questioned his or her competency to proceed. Here, upon a review of the State's Response, in conjunction with the record attachments provided with said Response, this Court finds merit in the State's argument. The primary evidence Defendant highlights to support his allegation is the statements he made in court during the final pretrial hearing. Again, this is the exact evidence Defendant used to support his allegation on direct appeal.
>
> Reviewing the record as a whole, however, there is no evidence Defendant was incompetent to stand trial. In fact, in Ground Five of the instant Motion, Defendant avers counsel was ineffective for misadvising Defendant not to testify at trial. Indeed, someone who is allegedly incompetent to stand trial would not understand this process much less voluntarily waive the right to testify while maintaining his right to remain silent. Moreover, there was evidence Defendant attempted to fabricate incompetency during trial. Specifically, Defendant's co-defendant testified Defendant told her "to play crazy" when she appeared in court and if she took all the blame, his dad would hire an attorney to represent her. Ground One is denied.

Ex. C1 at 275-76 (internal citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial of Petitioner's Rule 3.850 motions without

11

issuing a written opinion, and subsequently denied Petitioner's requests for rehearing. See Ex. C2; Williams, No. 1D17-1672.

Upon thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to federal habeas relief as to Ground Two.

Even assuming the state court's adjudication of this claim is not entitled to deference, the claim is without merit. In the state trial court, Petitioner was represented by Gregory Messore and Todd Niemczyk. See Ex. B8 at 250. Mr. Messore, a death penalty certified attorney, served as lead counsel. See Ex. B1 at 36. The record reflects that counsel filed dozens of pretrial motions. At a pretrial hearing, Mr. Messore was present when Petitioner told the trial judge he was "mentally ill" and "can't get any help." Ex. B6 at 992-93. Mr. Messore, however, did not interject or say anything on the record. During the trial, when the trial judge engaged in a colloquy with Petitioner regarding whether he would testify, Petitioner asked for and was granted additional time to speak with his counsel. See Ex. B11 at 867-70. Similarly, during the penalty phase, Petitioner conferred with counsel regarding his attire and appropriately answered the judge's questions. See Ex. B13 at 13-15.

"[T]he defendant's attorney is in the best position to determine whether the defendant's competency is suspect. Accordingly, failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that the defendant's competency was not really in doubt[.]" Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996). Petitioner has neither demonstrated that a reasonably competent attorney would have questioned whether he had sufficient present ability to consult with counsel nor questioned whether he had a rational, as well as factual understanding of his criminal proceeding. See Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges."). Moreover, even assuming deficient performance, Petitioner has failed "to show that there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 479 (11th Cir. 2012). As such, Ground Two is due to be denied.

Accordingly, it is

**ORDERED**:

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

13

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of July, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 7/7
c:
Merlin Williams, #J42761
Counsel of Record

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.